UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| FRANK STINCHCOMB, | CASE NO. 1:10 CV 2393 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| v. | |
| | MEMORANDUM OF OPINION |
| DEPARTMENT OF REHABILITATION AND CORRECTIONS, *et al.*, | AND ORDER |
| Defendants. | |

*Pro se* plaintiff Frank Stinchcomb filed this action under 42 U.S.C. § 1983 against the Ohio Department of Rehabilitation and Correction ("ODRC"), and ODRC Director Ernie Moore. In the Complaint, plaintiff alleges he is not receiving proper medical care. He seeks injunctive relief.

**Background**

Mr. Stinchcomb contends he has Hepatitis C. The treatment protocol requires the patient to receive the Hepatitis A and B vaccines before beginning treatment for Hepatitis C. Mr. Stinchcomb claims he began to receive these vaccines prior to his arrival at the Marion Correctional Institution ("MCI") in November 2006. He claims the physician who initially examined him referred him to a specialist; however, this referral was removed from his medical file. He made

several requests for the Hepatitis C treatment, but was told too much time had transpired since he received his last Hepatitis A and B vaccine. He was required to undergo a second set of vaccines before he could begin treatment for Hepatitis C in November 2007. He was transferred to the Grafton Correctional Institution ("GCI") on December 26, 2007.

Mr. Stinchcomb alleges that after the treatment ended, his Hepatitis C returned. He was taken to the emergency room at a hospital in Elyria, Ohio on March 23, 2009, where he claims he was told he had liver failure. He returned to the emergency room on April 7, 2009, with similar symptoms. He also complained of breathing difficulty, severe neck pain, and abdominal pain. He was given a CT scan, and was diagnosed with gas in the digestive tract. He was given a medication to block gastric acid. He contends the corrections officers asked a nurse how much longer Mr. Stinchcomb would be, and she replied that the physician "was concerned about some spots that showed up and he'd be there in a little bit." (Compl. at 6.) Mr. Stinchcomb states that although the nurse did not elaborate on her response, he assumed that the spots had been seen on his lungs. The physician's written report contained no mention of spots or other abnormalities.

Mr. Stinchcomb continued to complain of these symptoms when he returned to the prison. He questioned the nurse's reference to spots, and requested additional testing. He contends Dr. Juan did not immediately order more tests. At some point, he was given a Telemed appointment with a specialist from OSU. The physician ordered a chest x-ray to be taken. Mr. Stinchcomb contends it revealed a partially collapsed lung and "fibrous in the lower lung fields."(Compl. at 6.) Another set of x-rays were taken to follow up on Mr. Stinchcomb's

-2-

condition. These x-rays showed no abnormality.[1] Mr. Stinchcomb questioned whether the second set of x-rays was performed correctly. (Informal Compl. Res. August 24, 2009). He mentions two to three other tests that were performed. He claimed the tests were senseless because they would obviously produce negative results. He claims one report showed "several hypoechoic solid appearing structures in the head of the pancreas...thought to be peripancreatic adenopathy." Mr. Stinchcomb had a Telemed appointment with pulmonary specialist at OSU on September 22, 2009. The specialist found no evidence of spots and no adenopathy. He received another chest x-ray on October 2, 2009, which was unremarkable. He also had a thoracic echo test which was also negative.

      Mr. Stinchcomb filed several grievances about his medical care. In response, the Chief Inspector noted that "since January, 2009 [he had] been seen by GI twice; Pulmonary once; received two special lung tests; ENT four times; and cardiology once. [He had] three specialty follow up appointments pending for 2010." (Decision of Chief Inspector Dec. 31, 2009)

      Mr. Stinchcomb continued to complain he was in pain. He found a book in the library that suggested a potential liver problem. He requested that blood be drawn and a liver biopsy be done to check for cancer. He requested another CT scan. Mr. Stinchcomb contends the unfavorable reports were pulled from his medical file to conceal the truth about his health. In response to these claims, the Chief Inspector noted:

      I find that you are being followed in CCC for hypertension and liver

---

[1] The date of these x-rays is not entirely clear. Mr. Stinchcomb alleges the first set of x-rays was taken one and a half to two months after his emergency room visit. The Chief Inspector's Decisions on his grievances indicates he received the first chest x-ray on April 28, 2009, and a second x-ray on May 18, 2009. (Decision of the Chief Inspector Dec. 31, 2009).

-3-

>disease and last seen on 5-10-10. I also note that you are being followed by the gastroenterologist for your liver disease and seen on 5-7-09 after the emergent issue and again on 5-27-10 and have had several tests related to your complaint. There is nothing noted in any of the tests that would indicate that you have any emergent issues...With that being said, you had a CT of your abdomen/pelvis on 4-8-09. You had several tests to your lungs which too would have shown if there were any abnormalities and your consult with OSU pulmonary specialist on 9-22-09 indicated that you were worried about a spot. The specialist noted "due to some concern for adenopathy associated with your pancreas problem, which clearly was not there." Ventilation perfusion tests were done on 10-2-09 including a chest x-ray that was normal. Since April 2009, you have had 31 lab tests completed. On 6-21-10 one of the tests was AFP (Alpha-Fetoprotein Tumor Marker) which looks for cancer. Your result was normal and you have had four of these tests since September 2009.

(Compl. at 23., Decision of the Chief Insp. 7/1/10).

Mr. Stinchcomb claims he requires an examination by physicians who are not connected or employed by the State of Ohio. He contends the medical professionals who treat him misstate facts and falsify documents to conceal his true medical condition. He requests a liver biopsy, with an examination of his spleen and pancreas. He also requests additional blood tests to determine whether he has cancer. In the alternative, he requests his immediate release from prison.

**Analysis**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*,

---

[2] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it

490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

### I. 2006-2007 claims

As an initial matter, the Court cannot consider claims arising from events that took place in 2006 and 2007. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995). Mr. Stinchcomb alleges that from his arrival at MCI in November 2006 until his transfer to GCI in December 2007, his treatment for Hepatitis C was delayed. This action was filed in 2010, well beyond the expiration of the two-year statute of limitations period. There would be no purpose in addressing claims that arose in 2006 and 2007 in view of the fact that they are clearly time-barred. *See Fraley v. Ohio Gallia County*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir., Oct. 30, 1998)(affirming *sua sponte* dismissal of *pro se* §1983 action filed after two year statute of limitations for bringing such an action had expired).

### II. Eighth Amendment Claims

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether

---

is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

First, Mr. Stinchcombs fails to establish that a deprivation of medical care has occurred. His Complaint and attachments suggest he continues to receive treatment for Hepatitis through the prison's Chronic Care Clinic. He is under the care of a gastroenterologist, and has been examined several times by a pulmonologist, a cardiologist, and an Ear Nose and Throat specialist. He has been taken to the emergency room and to the Ohio State University Hospital for testing and treatment. Although he has some concern regarding information he was given about spots in an undisclosed location, numerous tests performed to date have all been negative. There is no indication in the Complaint that Mr. Stinchcomb has been denied medical care. He disputes the accuracy of the testing and the adequacy of the care he is receiving.

In order to establish a claim for inadequate medical care under the Eighth

-6-

Amendment, Mr. Stinchcomb must demonstrate that the Defendants acted with deliberate indifference to his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Id.* at 837. Mere negligence will not suffice. *Id.* at 835-36. Consequently, allegations of medical malpractice, negligent diagnosis, or negligent treatment fail to state an Eighth Amendment claim. Furthermore, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5. (6th Cir. 1976). In this case, Mr. Stinchcomb disputes the accuracy of the test results and the diagnoses that follow those tests. Those types of claims are, at best, assertions of medical malpractice. They do not rise to the level of deliberate indifference to serious medical needs as required to state a constitutional claim.

Moreover, even if Mr. Stinchcomb had stated a claim for violation of his Eighth Amendment rights, the ODRC and its Director would not be the proper parties to this lawsuit. To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). States, their agencies and their employees sued in their official capacities are not "persons" for the purposes of § 1983 litigation. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

This suit cannot be brought against Mr. Moore in his individual capacity. A Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was

-7-

personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The complaint simply contains no facts which reasonably associate the ODRC Director to any of the decisions made with regard to Mr. Stinchcomb's medical care.

Mr. Stinchcomb's Complaint asks the Court to find that the medical professionals at GCI were deliberately indifferent to his serious medical needs and then hold the ODRC and its Director responsible for the constitutional violation. The Court cannot grant that request. *Respondeat superior* is not a proper basis for liability under § 1983. *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir.2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Supervisors cannot be made liable based solely on the right to control employees, or simple awareness of employees' actions. *Leary,* 349 F.3d at 903; *Bellamy,* 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' " *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982)). At a minimum, a Plaintiff must show that the supervisor at least "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays,* 668 F.2d at 874). There is no suggestion in the Complaint that Mr. Moore was even aware of Mr. Stinchcomb's medical issues. He is not a proper Defendant in this action.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court

certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

    IT IS SO ORDERED.

                    /s/ Patricia A. Gaughan
                   PATRICIA A. GAUGHAN
                   UNITED STATES DISTRICT JUDGE

Dated: 2/28/11

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.